UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| KYLE MOELLER,<br><br>　　　　　　　Plaintiff,<br><br>vs.<br><br>UNITED STATES,<br><br>　　　　　　　Defendant. | 3:21-CV-03012-RAL<br><br><br>ORDER GRANTING MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION |

Kyle Moeller ("Moeller") filed this lawsuit against the United States under the Federal Tort Claims Act (FTCA). Doc. 1. His claims in this lawsuit concern grazing permits that Moeller had attempted to secure from the Bureau of Indian Affairs (BIA) to pasture his cattle on tribal trust land located within the Rosebud Sioux Indian Reservation. Doc. 1. Moeller alleges that the BIA negligently failed to provide him with accurate information regarding the pasture authorization process which ultimately resulted in the denial of his grazing permit and a prohibition against grazing cattle on the Rosebud Sioux Indian Reservation. Doc. 1. The United States has filed a motion to dismiss and a brief in support thereof, arguing that this Court lacks subject matter jurisdiction over Moeller's claims. Docs. 4, 5. Moeller has responded in opposition, Doc. 11, and the United States has replied, Doc. 13. This Court now grants the United States's motion to dismiss for the reasons contained herein.

**I. Facts Relevant to Motion to Dismiss**

1

This Court in ruling on the motion to dismiss draws the facts primarily from Moeller's complaint. See Doc. 1. Moeller is a rancher and lifelong resident of Tripp County, South Dakota. Doc. 1 at ¶ 1. Moeller has pastured cattle on trust land located on the Rosebud Sioux Indian Reservation for nearly thirty years including on range units 265 and 204, permitted at all relevant times to an enrolled member of the Rosebud Sioux Tribe. Doc. 1 at ¶ 4. On July 22 and July 23, 2019, Moeller submitted and filed with the Defendant United States, through the Department of Interior's BIA, Rosebud Agency, Mission, South Dakota, a management plan and pasturing authorization for Moeller to pasture his cattle on range units 265 and 204 until November 6 and 7, 2019. Doc. 1 at ¶ 7. Thereafter, on or about July 23, 2019, Moeller placed his cattle on range units 265 and 204. Doc. 1 at ¶ 9.

Moeller alleges that he placed his cattle on the units pursuant to long-standing practice and procedure at BIA which allowed cattle to be pastured as soon as the management plan was on file at the Rosebud Agency. Doc. 1 at ¶ 8. However, the Rosebud Sioux Tribe had passed a resolution in 2016 to modify that practice. The resolution stated:

> A Pasturing Authorization shall be required and reviewed by the Land & Natural Resources Committee. The Land & Natural Resources Committee will make recommendation to Tribal Council for approval of pasturing authorization(s) to be completed 2 weeks prior to the beginning of their management plan. The Superintendent will make for final approval. This pertains to all permits where livestock other than the permittee's are taken in for grazing. All permittees and any person contracting with a permittee to pasture livestock will be deemed to be doing business on the Reservation and shall be subject to the regulatory and adjudicatory jurisdiction of the Rosebud Sioux Tribe. . . . Failure to obtain a Pasturing Authorization will constitute a violation of trespass, a violation of the contract and subsequent loss of grazing privileges.

Doc. 6-1 at 4-5. Moeller claims that he worked with BIA employees to develop the written management plan and pasturing authorization for both range units, but never received notice regarding the Rosebud Sioux Tribe's 2016 resolution. Docs. 1 at ¶ 5, 11 at 2.

Moeller alleges that the BIA on August 19, 2019, negligently claimed that Moeller was unlawfully pasturing cattle on the range units because no management plan and pasturing authorization had been approved, despite the BIA having routinely considered pasturing authorizations effective on submission and filing with the BIA regardless of the date of formal approval. Doc. 1 at ¶ 10. The BIA refused to approve Moeller's pasturing authorization and subsequently served him with trespass notice in early September 2019. Doc. 1 at ¶ 11. The Rosebud Sioux Tribe then passed Resolution 2019-204 preventing Moeller from ever pasturing, leasing, permitting, or utilizing any tribal land on the Rosebud Sioux Tribe Reservation. Doc. 1 at ¶ 11.

On May 27, 2021, Moeller filed a complaint seeking four million dollars in damages as a result of the BIA's alleged negligence, which he claims caused significant injuries including the inability to utilize range units 265 and 204, permanent loss of grazing land he had relied upon for over thirty years, expenses related to trucking his cattle from range units 265 and 204, reduction of his herd due to lack of pasture land, financial loss due to the sale of cattle, expenses related to securing additional pasture land, damage to his credit rating and financial reputation, and emotional and psychological damages. Doc. 1 at ¶¶ 12, 14. The United States filed a motion to dismiss on July 27, 2021, arguing that this Court lacks subject matter jurisdiction over the claim and asserting sovereign immunity. Doc. 4. Moeller responded on October 1, 2021, and the United States replied on October 15, 2021. Docs. 11, 13.

**II. Standard of Review**

The United States brings its motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure. Rule 12(b)(1) authorizes dismissal for lack of subject matter jurisdiction. On a motion to dismiss under Rule 12(b)(1), the standard of review depends on whether the defendant

3

is making a facial attack or factual attack on subject matter jurisdiction. Stalley v. Catholic Health Initiatives, 509 F.3d 517, 520–21 (8th Cir. 2007). Where the defendant makes a facial attack to challenge whether the facts alleged in the complaint establish subject matter jurisdiction under Rule 12(b)(1), the plaintiff is afforded similar safeguards as in a Rule 12(b)(6) motion. Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990). Namely, the Court must "accept as true all factual allegations in the complaint, giving no effect to conclusory allegations of law," and determine whether the plaintiff's alleged facts "affirmatively and plausibly suggest" that jurisdiction exists. Stalley, 509 F.3d at 521. A court's review then is limited to the face of the pleadings. Branson Label, Inc. v. City of Branson, 793 F.3d 910, 914 (8th Cir. 2015).

On the other hand, where the defendant attacks the factual basis for subject matter jurisdiction, the court can consider matters outside the pleadings, "and the non-moving party does not have the benefit of 12(b)(6) safeguards." Osborn, 918 F.2d at 729 n.6. "A factual attack occurs when the defendant challenges the veracity of the facts underpinning subject matter jurisdiction." Davis v. Anthony, Inc., 886 F.3d 674, 679 (8th Cir. 2018) (cleaned up and citation omitted). In that case, "no presumptive truthfulness attaches to the plaintiff's allegations," and a "court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Osborn, 918 F.2d at 730 (citation omitted). The United States does not specify whether its motion to dismiss is a factual or facial attack, but it appears to be and will be analyzed as a facial attack. The outcome would be the same if this Court were to view the motion to dismiss as a factual attack.

**III. Discussion**

The United States asserts that this action is barred under the doctrine of sovereign immunity. Doc. 5. "Sovereign immunity shields the United States and its agencies from suit absent a waiver." Compart's Boar Store, Inc. v. United States, 829 F.3d 600, 604 (8th Cir. 2016)

(citing FDIC v. Meyer, 510 U.S. 471, 475(1994)). "Sovereign immunity is jurisdictional in nature." Meyer, 510 U.S. at 475. Thus, the United States's consent to be sued is a prerequisite to a court acquiring jurisdiction over the case. Id. Any consent of the United States to be sued must be "express and unequivocal." Preferred Risk Mut. Ins. Co. v. United States, 86 F.3d 789, 792 (8th Cir. 1996). If Congress chooses to waive sovereign immunity, then it prescribes "the terms and conditions on which the United States consents to be sued, and the manner in which the suit shall be conducted." Mader v. United States, 654 F.3d 794, 797 (8th Cir. 2011) (cleaned up and citation omitted).

When a federal defendant invokes sovereign immunity as a defense and ground for dismissal, the plaintiff must point to a specific act of Congress that waives sovereign immunity and allows the claims to go forward. See V S Ltd. P'ship v. Dep't of Hous. and Urb. Dev., 235 F.3d 1109, 1112 (8th Cir. 2000) ("To sue the United States, [the plaintiff] must show both a waiver of sovereign immunity and a grant of subject matter jurisdiction."). "Any waiver of sovereign immunity, including the FTCA, must be strictly construed and, to come within the ambit of a particular waiver, a claimant must fully adhere to all statutory procedures." Garreaux v. United States, 544 F. Supp. 2d 885, 894 (D.S.D. 2008) (citing United States v. Mitchell, 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980) and Block v. North Dakota, 461 U.S. 273, 287(1983)). Ultimately, the plaintiff bears the burden of establishing that the United States has unequivocally waived its sovereign immunity. Id. (citing Barnes v. United States, 448 F.3d 1065, 1066 (8th Cir. 2006)).

Here, Moeller alleges that the FTCA grants this Court subject matter jurisdiction over his claims and waives the United States's sovereign immunity. Doc. 11 at 3. The FTCA indeed operates as both a grant of subject matter jurisdiction and a waiver of sovereign immunity over

certain tort claims. Mader, 654 F.3d at 797. Such claims are those that are "actionable" under 28 U.S.C. § 1346(b)(1). Brownback v. King, — U.S. —, 141 S. Ct. 740, 746(2021) (citation omitted). A claim is "actionable" under § 1346(b)(1) if it alleges six elements. Id. The claim must be:

> (1) against the United States, (2) for money damages, ... (3) for injury or loss of property, or personal injury or death (4) caused by the negligent or wrongful act or omission of any employee of the Government (5) while acting within the scope of his office or employment, (6) under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

Id. (cleaned up); see also 28 U.S.C. § 1346(b)(1). The Eighth Circuit has made clear that the "law of the place" means "law of the state," regardless of whether the tortious act occurred on tribal or non-tribal land. LaFromboise v. Leavitt, 439 F.3d 792, 793, 796 (8th Cir. 2006). Thus, to make out an actionable FTCA claim in this case, Moeller must allege that the United States committed a tort under South Dakota law for which a private person could be held liable. See Buckler v. United States, 919 F.3d 1038, 1044 (8th Cir. 2019). Even if Moeller does that, this Court may still lack jurisdiction. After all, the FTCA contains a number of exceptions to its waiver of sovereign immunity and grant of jurisdiction. See 28 U.S.C. § 2680. Among these exceptions is the intentional tort exception. § 2680(h).

The foundation of Moeller's complaint is that the BIA negligently failed to provide him with notice of the 2016 Rosebud Sioux Tribe resolution, causing him to fall out of compliance with Rosebud Sioux Tribe grazing procedures and resulting in the removal of his cattle from units 265 and 204 and the suspension of future grazing privileges. Moeller states that his

> claim is that the BIA knew that Moeller was going to place his cattle on units 265 and 204 when he filed the grazing management plan and pasturing authorization on July 23 as he had done for the past 30 years. He told them this was his plan and no person with the BIA indicated that he could not. They never mentioned any 2016 grazing resolution nor ever provided him with a copy of the 2016 grazing resolution

> as required by 25 CFR 166.104. Due to the BIA's negligent inaction and failure to advise Moeller that he could not place his cattle on the units until the tribe had approved the pasturing agreement, Moeller was issued a trespass notice by the BIA requiring him to remove his cattle . . . [, and] Moeller incurred consequential damages.

Doc. 11 at 2.

In response, the United States argues that this Court lacks jurisdiction over Moeller's claims because they fall within the "intentional tort exception" to the waiver of sovereign immunity. Doc. 13 at 1. Under the intentional tort exception, the waiver of sovereign immunity does not extend to any claim "arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." Millbrook v. United States, 569 U.S. 50, 52 (2013) (quoting 28 U.S.C. § 2680(h)). Moeller argues that "nowhere in the complaint are the words misrepresentation, deceit, or intentional interference . . . , only the word negligence." Doc. 11 at 2. However, to determine whether the intentional tort exception applies, courts should examine the conduct underlying the claim, not merely how the claim is labeled in the complaint. See United States v. Neustadt, 366 U.S. 696, 703 (1961) ("We must ... look beyond the literal meaning of the language to ascertain the real cause of the complaint" (citation omitted)); Gross v. United States, 676 F.2d 295, 305 (8th Cir. 1982) (Gibson, J., dissenting) ("Unless a court looks at the acts giving rise to a complaint, the applicability of the FTCA will depend on the ingenuity of counsel in drafting the complaint."). A plaintiff cannot circumvent § 2680(h) through "artful pleading of the claim." Buxton v. United States, No. CIV. 09-5057, 2011 WL 4528337, at *11 (D.S.D. Apr. 1, 2011); see also United States v. Shearer, 473 U.S. 52, 55 (1985) (explaining that the plaintiff could not avoid the reach of § 2680(h) by framing her complaint in terms of negligence when the sweeping language of § 2680(h) excludes any claim arising out of assault or battery). Thus, "a mere allegation of negligence does

7

not turn an intentional tort into negligent conduct." Benavidez v. United States, 177 F.3d 927, 931 (10th Cir. 1999).

Even though Moeller labeled his claim as negligence, redress for the conduct alleged lies not in negligence but in the cause of action for interference with contract or interference with prospective economic advantage. Under South Dakota state law, the elements for interference with contract and interference with prospective economic advantage are similar. Both torts require the plaintiff to prove: (1) the existence of either a valid contractual or economic relationship or expectancy; (2) knowledge by the interferer of the relationship or expectancy; (3) an intentional and unjustified act of interference on the part of the interferer; (4) proof that the interference caused the harm sustained; and (5) damage to the party whose relationship or expectancy was disrupted. Gruhlke v. Sioux Empire Fed. Credit Union, Inc., 756 N.W.2d 399, 406 (S.D. 2008); Mueller v. Cedar Shore Resort, Inc., 643 N.W.2d 56, 68 (S.D. 2002) (citation omitted).

Here, Moeller alleges that he had a long-standing economic relationship with the Rosebud Sioux Tribe because he had pastured cattle on land held in trust by the BIA. Moeller alleges the BIA misrepresented the requirements for pasture authorization by failing to inform him about the 2016 Rosebud Sioux Tribe resolution modifying application procedures. This resulted in Moeller's failure to follow proper procedure which caused the BIA to issue trespass papers to Moeller and the Rosebud Sioux Tribe to ultimately suspend his grazing privileges. Such allegations do not constitute negligence under South Dakota law. Moeller cites to Smith v. Neville, 539 N.W.2d 679, 681 (S.D. 1995), to contend that the state cannot create an objectively reasonable impression and then "pull the rug" out from under a claimant, Doc. 11 at 6. The Smith case, however, was a garden-variety negligence case where the plaintiff's vehicle was struck by a snowplow driven by the defendant. Id. at 679. The issue on appeal in Smith was whether the

plaintiff had provided sufficient notice to the State of South Dakota to comply with SDCL §§ 3-21-2 and 3-21-3 to avoid summary judgment, not whether an affirmative act by the state, such as failing to provide accurate information to an applicant, created a new duty to which the state is beholden within a negligence claim. The court in Smith deemed the actions of Smith in giving notice and the conduct of State agents to create a situation where the State was estopped from asserting a lack of notice. Id. at 680-81. Smith did not establish a tort claim to cover the conduct Moeller alleges.

Similarly, Moeller cites to Farmers Home Mut. Ins. Co. v. Gustafson & Larson Co., 42 NW.2d 605, 605-06 (S.D. 1950), for the principal that a negligence claim exists where there is "the inadvertent failure to perform a noncontractual duty, to the logical consequent damage of another person." This is simply a restatement of the duty of "due care." Id. Farmers Home does not establish that the BIA owed Moeller a duty independent from the pasture authorization or independent from interference with contract or interference with prospective economic advantage. See Neustadt, 366 U.S. at 707 (reasoning that the plaintiff's claim arose out of misrepresentation because the only duty the government owed the plaintiff was "the duty to use due care in obtaining and communicating information upon which that party may reasonably be expected to rely in the conduct of his economic affairs," which is merely a restatement of the commonly understood legal definition of negligent misrepresentation). Because Moeller's claim lies in interference with contract or interference with prospective economic advantage, this Court does not have jurisdiction over his claim. See Moessmer v. United States, 760 F.2d 236, 237 (8th Cir. 1985) (holding that both interference with contract and interference with a prospective economic advantage are intentional torts barred from FTCA coverage).

Moeller argues that the existence of a cause of action for interference with a contract right does not preclude a plaintiff from bringing another cause of action against the United States which arises out of the same factual situation. Doc. 11 at 5. Moeller cites to Val-U Const. Co. of S. Dakota v. United States, 905 F. Supp. 728, 734 (D.S.D. 1995), to argue that a party is entitled to forego one remedy in favor of the other to avoid a jurisdictional defect. Doc. 11 at 5. Although Val-U Construction does recognize that it is not a valid jurisdictional objection that a plaintiff chose to avail itself of one cause of action instead of another, it also states "causes of action distinct from those excepted under section 2680(h) are nevertheless barred when the underlying governmental conduct 'essential' to the plaintiff's claim can be fairly read to 'arise out of' conduct that would establish an excepted cause of action." Id. (quoting McNeily v. United States, 6 F.3d 343, 347 (5th Cir.1993)). As explained previously, the only cognizable causes of action based on the facts alleged in Moeller's complaint are for interference with contract or interference with prospective economic advantage, which are claims outside of the FTCA's grant of jurisdiction and waiver of sovereign immunity.

To the extent Moeller is attempting to assert a claim for misrepresentation, this Court does not have jurisdiction under the FTCA over such a claim. See 28 U.S.C. § 2680(h); Bonuchi v. United States, 827 F.2d 377, 378 (8th Cir. 1987) ("Although the FTCA does not delineate the torts for which the United States may be sued, it does specifically except certain claims from application of the Act, including claims arising out of either intentional or negligent misrepresentation."). This Court's decision in Larson v. United States, No. 3:20-CV-03019-RAL, 2021 WL 3634149, at *4 (D.S.D. Aug. 17, 2021), is illustrative of why Moeller's complaint fails against a subject matter jurisdictional challenge. In Larson, the plaintiff claimed that the BIA negligently provided inaccurate information to the Rosebud Sioux Tribe resulting in the loss of the plaintiff's grazing

privileges. Here, Moeller claims that the BIA negligently failed to provide accurate information to him when helping him prepare his pasture authorization, which resulted in the loss of grazing privileges. In both cases, the plaintiffs' damages arose from an alleged misrepresentation from the BIA. Like the plaintiff in Larson, Moeller's allegations do not constitute a negligence claim. Accordingly, Moeller's complaint does not fall within the FTCA, and the United States is entitled to dismissal based on lack of subject matter jurisdiction.

## IV. Conclusion

In sum, this Court does not have FTCA jurisdiction over Moeller's claims. Therefore, it is hereby

ORDERED that the United States's Motion to Dismiss, Doc. 4, is granted without prejudice to Moeller filing a Tucker Act claim.

DATED this 6th day of December, 2021.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE